UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER M. MONGIELLO,

*Plaintiff*,

v.

HSBC BANK USA NA AS TRUSTEE FOR
THE LMT 2006-6 TRUST FUND, A.K.A
HSBC BANK USA NA AS TRSUTEE FOR
THE LEHMAN MORTGAGE TRUST
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-6, PHH
CORPORATION, PHH CORPORATION, *and*
PHH MORTGAGE,

*Defendants*.

No. 24-CV-2291 (KMK)

ORDER & OPINION

---

Appearances:

Christopher M. Mongiello
Pelham Manor, NY
*Pro se Plaintiff*

Leisl Bauman Kerechek, Esq.
Stradley Ronon Stevens & Young, LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Christopher M. Mongiello ("Plaintiff"), proceeding pro se, brings this Action against

HSBC Bank USA NA ("HSBC"), PHH Corporation, and PHH Mortgage ("PHH") (collectively,

"Defendants"), seeking to quiet title for real property at issue and damages for slander of title,

the violation of certain statutes, and an asserted claim under the Fair Debt Collection Practices

Act ("FDCPA"), for which he also seeks treble damages. (*See* Am. Compl. ("FAC") ¶¶ 45–74

(Dkt. No. 49).) As part of his assertion that Defendants violated various statutes, Plaintiff claims

that he is entitled to judgment pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq., through its implementing regulations, known as Regulation X, 12 C.F.R. §§ 1024.1 et seq.; the New York Real Property Actions and Proceedings Law; and 18 U.S.C. § 152(4), which is a subsection of a federal criminal statute that forbids the presentation of knowingly and fraudulently presenting any false claim in a bankruptcy proceeding. (*See* FAC ¶¶ 9, 36, 37g, 45–53, 68–70.)

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (*See* Mot. to Dismiss (the "Motion") (Dkt. No. 55); Mem. of Law ISO Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 55-3).)[1] For the reasons that follow, the Motion is granted.

## I. Background

### A. Materials Considered

"'When considering a motion to dismiss, the Court's review is confined to the pleadings themselves,' because 'to go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56.'" *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . . , documents incorporated into the

___

[1] In citations to record materials, the Court refers to page numbers as automatically generated by the Electronic Case Filing system.

complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

Further, when reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics and citation omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the] plaintiff['s] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks and citation omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).  Given that Plaintiff is proceeding pro se, the Court will consider the documents attached to his Complaint.  *See Barkai v. Mendez*, 629 F. Supp. 3d 166, 175 (S.D.N.Y. 2022) (considering exhibits attached to pro se complaint when deciding motion to dismiss); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022

3

WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to pro se opposition memorandum).[2]

In conjunction with their Motion to Dismiss (and as they did in conjunction with their Motion to Dismiss Plaintiff's initial Complaint), Defendants have submitted a declaration with a number of additional exhibits, most of which were attached to Defendants' Motion to Dismiss

---

[2] In his Opposition to Defendants' Motion to Dismiss, Plaintiff represents that his Amended Complaint was "DRAFTED BY COUNSEL," rather than prepared *pro se*. (Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") 9 (Dkt. No. 57) (use of all-caps typesetting in original).)  He made the same representation when he filed his initial Complaint.  *See Mongiello v. HSBC Bank USA as Tr. For LMT 2006-06 Tr. Fund*, No. 24-CV-2291, 2025 WL 674345, at *1 n.1 (S.D.N.Y. Mar. 3, 2025).  As the Court explained in its prior Opinion, *id.*, the Court would be entitled, on this basis, to deny Plaintiff the benefit of liberal construction and other measures of deference afforded to pro se plaintiffs. *Andre v. Warden, FCI Danbury*, No. 24-CV-1295, 2025 WL 3281732, at *5–6 (D. Conn. Nov. 25, 2025) (collecting cases where courts concluded that litigants were "not entitled to 'claim the special consideration which the courts customarily grant to pro se parties'" where their pleadings were ghostwritten by attorneys) (quoting *Spira v. J.P. Morgan Chase & Co.*, 466 F. App'x 20, 22 n.1 (2d Cir. 2012) (summary order)); *Koonce v. Gaylord Hosp., Inc.*, No. 13-CV-362, 2015 WL 4603414, at *4 n.2 (D. Conn. July 30, 2015) (declining to liberally construe pleadings where attorney had been involved in drafting nominally pro se complaint); *see also In re Fengling Liu*, 664 F.3d 367, 369–72 (2d Cir. 2011) (explaining that courts regularly determine that "attorneys who ha[ve] ghostwritten briefs or other pleadings for ostensibly *pro se* litigants ha[ve] engaged in misconduct," on the basis that this activity "inappropriately afford[s] the former client the benefit of the liberal construction rule for *pro se* pleadings" and noting ethical guidance to the effect that applying the liberal construction rule is inappropriate in these circumstances).

Given that, as described further below, Plaintiff's Amended Complaint fails to state a claim under the more liberal standard applied to pro se pleadings, the Court nevertheless applies the pro se pleading standards.  However, the Court reminds Plaintiff that he is under a duty of candor to the Court at all times.  If he makes false statements in his filings, he runs the risk of sanctions pursuant to Federal Rule of Civil Procedure 11. *See, e.g.*, *Kilkenny v. L. Off. of Cushner & Garvey, L.L.P.*, No. 08-CV-588, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) ("[E]ven pro se parties have an obligation to act honestly and in good faith when conducting business before the courts, and if they do not, they risk the imposition of sanctions.").  Although "it is understandably difficult for *pro se* litigants to participate effectively in our legal system, and for this reason, the Court takes pains to afford *pro se* litigants great liberty in presenting and pursuing their claims," it is nevertheless the case that "*all litigants—pro se or not—[must] be forthright and honest with the Court*" or those litigants run the risk of sanctions, including and up to monetary sanctions or the dismissal of a litigant's case. *Burhans v. Amler*, No. 06-CV-8325, 2009 WL 10741846, at *2 (S.D.N.Y. May 14, 2009) (emphasis added).

the initial Complaint.  These include a note filed by Plaintiff and co-borrower Tiffany Eastman

("Eastman") in 2006, (Mot. to Dismiss, Ex. A ("Ex. A") (Dkt. No. 55-5)); the recording of the

related mortgage, (*id.*, Ex. B ("Ex. B") (Dkt. No. 55-6)); a 2012 assignment of the mortgage, (*id.*,

Ex. C ("Ex. C") (Dkt. No. 55-7)); a 2014 loan modification agreement, (*id.*, Ex. D ("Ex. D")

(Dkt. No. 55-8)); a 2014 stipulation of discontinuance in a foreclosure action initiated in 2013,

(*id.*, Ex. E ("Ex. E") (Dkt. No. 55-9)); a 2022 New York Supreme Court order dismissing an

action initiated by Plaintiff in 2020, (*id.*, Ex. F ("Ex. F") (Dkt. No. 55-10)); a 2023 New York

Supreme Court order dismissing an action initiated by Plaintiff in 2023, (*id.*, Ex. G ("Ex. G")

(Dkt. No. 55-11)); a copy of the initial Complaint, (*id.*, Ex. H ("Ex. H") (Dkt. No. 55-12)); a

quitclaim deed executed by Eastman and Plaintiff in October 2010, (*id.*, Ex. I ("Ex. I") (Dkt. No.

55-13)); a copy of this Court's earlier opinion granting Defendant's first Motion to Dismiss, (*id.*,

Ex. J ("Ex. J") (Dkt. No. 55-14)); and a copy of Plaintiff's FAC, (*id.*, Ex. K ("Ex. K") (Dkt. No.

55-15)).  For his part, Plaintiff submits certain unnumbered exhibits that appear, at least in part,

to overlap with materials submitted by Defendants.  (*Compare, e.g.*, FAC, Ex. 2, at 76 (Dkt. No.

49-2) (quitclaim deed), *with* Ex. I, at 2 (same).)

It appears, however, that Plaintiff's attachments do not include Defendants' Exhibit A,

the note filed by Plaintiff and Eastman.  (*Contrast* Ex. A *with* FAC, Ex. 1, (Dkt. No. 49-1) *and*

FAC, Ex. 2.)  Accordingly, the Court first determine whether it may consider Exhibit A in its

determination of Defendants' Motion to Dismiss.  The gravamen of Plaintiff's FAC is a

challenge to the efforts to enforce a mortgage purportedly encumbering the Property.  (*See, e.g.*,

FAC ¶¶ 50, 55, 57, 60.).)  It directly references the note, (*see, e.g.*, FAC ¶ 37a), the validity of

efforts to enforce its purported obligations, (*id.* ¶¶ 37a, 51), and attaches other materials that

expressly reference the note, (*see, e.g.*, FAC, Ex. 1, at 1).  As the Second Circuit has explained,

where a complaint is "replete with references to [a document]," *Chambers*, 282 F.3d at 153 n.4, or "relies heavily upon its terms and effect," *id.* at 153, that document is properly considered on a Motion to Dismiss.

The Court's discretion to consider even those documents incorporated in a complaint by reference, however, is not without limit. The Court cannot consider a document from beyond the four corners of the complaint if there is a dispute "regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). This is a very strict requirement that can be satisfied by "even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document." *See UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426, 435 (S.D.N.Y. 2015); *see also Mbody Minimally Invasive Surgery PC v. United Healthcare Ins, Co.*, No. 14-CV-2495, 2016 WL 4382709, at *7 (S.D.N.Y. 2016) ("[T]he requirement that there be 'no dispute' about the authenticity of documents 'integral' to the complaint 'has been interpreted strictly[.]'" (citation omitted)). In his opposition to the Motion to Dismiss, Plaintiff, among other things, asserts that the note is "not authentic and is a forgery . . . ." (Pl.'s Opp'n 7.) This is sufficient to constitute a dispute as to the "authenticity or accuracy" of the document, such that it may not be considered on a Motion to Dismiss pursuant to Rule 12(b)(6). *See Prime Contractors, Inc. v. APS Contractors Inc.*, 754 F. Supp. 3d 289, 303 (E.D.N.Y. 2024) (concluding that a document could not be considered at the Motion to Dismiss stage given that, plaintiff's "challenge to the authenticity of the document . . . even if dubious or questionable . . . precludes the Court from taking judicial notice" (quotation marks omitted)). Accordingly, the Court does not consider the copy of the note submitted with Defendants' Motion. *See Savides v. United Healthcare Servs., Inc.*, No. 18-CV-4621, 2019 WL 1173008, at *2 (S.D.N.Y. Mar. 13, 2019) (concluding that, although a plan was "relevant and integral to the

6

Complaint," upon Plaintiff's objection to its "accuracy and authenticity" the Court would not consider the document, and accordingly denying a motion to dismiss); *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 416 n.4 (S.D.N.Y. 2010) ("[W]hile [the p]laintiffs' attempt to slalom their way through these documents may not be well-founded, and while [the p]laintiffs may face a rocky road in thwarting Defendants' inevitable summary judgment motion, the Court will apply [Second Circuit precedent] and decline to consider these documents at this time.").

Plaintiff's filings likewise omit Exhibit D (the 2014 loan modification agreement).  It, too, is directly referenced in Plaintiff's FAC, which relies upon its terms and effects.  (*See* FAC ¶ 37 (alleging "Plaintiff received a loan modification from Ocwen . . . when PHH took over servicing the loan . . . PHH began a campaign to breach the loan modification agreement," and making various representations as to the nature of the modification agreement).)  Given that the complaint directly references the document and relies "heavily upon its terms and effect," *Chambers*, 282 F.3d at 153 & n.4, the Court may consider this Exhibit on a Motion to Dismiss under Rule 12(b)(6).  Plaintiff does not clearly dispute its authenticity or argue that it is not genuine, he instead argues that the attachment of the documents should have been brought "pursuant to a . . . motion pursuant to [Federal] Rule [of Evidence] 201" and says the documents "are disputed by the Plaintiff."  (Pl.'s Opp'n 8.)  Despite this broad language, the Court can discern no actual assertion by Plaintiff that this document is inauthentic—and the Court will not read in such an objection where one is not clearly stated, and where the document is plainly incorporated by reference into the Amended Complaint.  Accordingly, the Court considers Exhibit D at the Motion to Dismiss stage.

Plaintiff's FAC includes (at least portions of) Exhibit B (the 2006 mortgage), (*compare* Ex B, at 5, *with* FAC, Ex. 1, at 12).  Ordinarily, the FAC would then be "deemed to include"

each of these documents "attached to it as an exhibit." *Chambers*, 282 F.3d at 152 (quoting *Int'l Audiotext Network, Inc. v. AT & T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (same). However, Plaintiff, even though he included the document in the FAC, now says that "the copy [of the mortgage attached to Defendant's Motion] is 'redacted and a forgery.'" (Pl.'s Opp'n 7.) This underexplained objection, although it is thin and scarcely plausible, precludes the Court from considering the complete copy of the mortgage attached to Defendants' Motion to Dismiss. "[E]ven implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document" make it improper to consider the document when deciding a Motion to Dismiss under Rule 12(b)(6). *Hagan*, 99 F. Supp. 3d at 435. Accordingly, the Court considers only the excerpts attached to Plaintiff's FAC. (*See* FAC, Ex. 1.)

As the Court determined in its previous opinion, Defendants' Exhibits D, F, and I are documents in the public record, and therefore subject to judicial notice. *See Mongiello v. HSBC Bank USA NA as Tr. for LMT 2006-6 Tr. Fund,* No. 24-CV-2291, 2025 WL 674345, at *2 (S.D.N.Y. Mar. 3, 2025). Still, "in taking judicial notice of . . . public records, the Court does so only to establish 'the fact of such litigation,' not for the truth of the matters asserted therein." *McGriff v. Keyser*, No. 17-CV-8619, 2019 WL 1417126, at *5 n.1 (S.D.N.Y. Mar. 29, 2019) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)). To that end, the Court does not credit factual findings in related state court opinions and the selected quotes in Defendants' briefing. *See Cabrera v. Schafer*, 178 F. Supp. 3d 69, 73–74 (E.D.N.Y. 2016) (denying the defendant's request for judicial notice of selected quotes from a decision in a different court).

8

The Court determines that Exhibit C (the 2012 assignment and 2019 corrective assignment, which likewise does not appear to be attached to Plaintiff's FAC) is also judicially noticeable, as this exhibit contains public records related to property. *See Torres v. MMS Grp., LLC*, No. 22-CV-6142, 2024 WL 3274310, at *7 n.10 (S.D.N.Y. July 2, 2024) (noting "a court may, on a 12(b)(6) motion, take judicial notice of public documents relating to property, such as a deed or chain of title." (alterations adopted) (internal quotation marks omitted) (quoting *Fawn Second Ave. LLC v. First Am. Title Ins. Co.*, 610 F. Supp. 3d 621, 628 (S.D.N.Y. 2022))); *McGriff*, 2019 WL 1417126, at *5 n.1 (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (noting that "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes")).[3]

B. Factual Background

The following facts are drawn from the Complaint as well as the above-described exhibits. They are assumed to be true for the purpose of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam). Of course, the Court need not—and does not—credit those allegations that simply represent conclusions of law. *Graham v. UMG Recordings, Inc.*, No. 25-

---

[3] Exhibits G, H, J, and K are filings from this Action. Although courts "can properly take judicial notice of documents filed in *another court's* docket to establish the fact of the litigation and related filings," *Palisades Estates EOM, LLC v. Cnty. of Rockland*, No. 23-cv-04215, 2025 WL 1295333, at *42 n.51 (S.D.N.Y. May 5, 2025) (emphasis added), the Court need not take judicial notice of materials filed at an early stage of the *same* proceeding. Such materials are part of the Action, and therefore not "outside" matters that require notice to be afforded to the Plaintiff before properly being introduced (though, of course, they may be considered only for purposes that are appropriate to the Motion before the Court). *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (describing, as justification for the conversion requirement under Rule 12(b), "the lack of notice to the plaintiff that outside matters would be examined" in the absence of this requirement).

CV-0399, 2025 WL 2879607, at *1 (S.D.N.Y. Oct. 9, 2025) ("The Court need not credit 'legal conclusions couched as factual allegations.'") (quoting *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021)).

On July 21, 2006, Plaintiff and Eastman obtained a mortgage that was secured by real property in the form of an apartment at 25 Leroy Place, PH-07, New Rochelle, New York 10801 (the "Property"). (FAC, Ex. 1, at 2–4 (portion of "security instrument," which appears to be a mortgage, secured by real property and signed by Plaintiff and Eastman); FAC ¶¶ 9, 12.) There also was a note that was likewise tied to the Property and the mortgage in some unspecified way. (*See* FAC, Ex. 1, at 1 (portion of the mortgage referencing the note); FAC ¶¶ 16a, 17.) On January 23, 2012, the mortgage was assigned by Indybank to HSBC Bank. (Ex. C, at 2.) Then, on February 27, 2013, HSBC sued Plaintiff and Eastman in New York State Supreme Court in Westchester County, seeking to foreclose on the Property. (*See generally HSBC Bank USA, NA, as Trustee for the LMT 2006-6 Tr. Fund v. Mongiello et al.*, Index No. 52653/2013 (N.Y. Sup. Ct. Feb. 27, 2023) (Dkt. No. 1) (Summons); FAC ¶¶ 16b, 27.) On October 8, 2014, the Parties stipulated that the action would be "discontinued without prejudice," (Ex. E, at 1); HSBC's counsel represented that the "foreclosure matter [was] being discontinued due to a loan modification," (*id.* at 3 (emphasis omitted)).

After this loan modification, Plaintiff alleges, the new loan "was solely in the name of Christopher Mongiello," (FAC ¶¶ 37a, 37b; *see also* FAC, Ex. 1, at 10 (apparent quitclaim deed between Eastman and Mongiello)), and "PHH took over servicing for the loan," (FAC ¶ 37). Despite this asserted change, PHH informed Eastman of its view that she was still obligated under the loan and mortgage. (*Id.* ¶ 37a.) As a result of this claim, Eastman purportedly "filed a family law action against Mongiello," that sought, among other things, four million dollars in

10

damages and requested that Plaintiff be held in contempt of court. (*Id.* ¶ 37c.) Plaintiff says that

this suit "resulted in Eastman obtaining a receivership," imposed upon Plaintiff "hundreds of

thousands of dollars in defense costs," led to Plaintiff's eviction from the Property, and to the

forced sale of the Property. (*Id.* ¶ 37d; *see also id.* ¶ 13.) Further, Plaintiff says that these events

"resulted in the divorce of Mongiello from his new wife and the irreparable breakdown of his

relationship with his new wife and child." (*Id.* ¶ 37e.)

Plaintiff says that Defendants "fraudulently billed" him, putting him into default, even

though "no payment" had been made on the mortgage in over six years. (*Id.* ¶ 38.) Plaintiff

contends that the loan servicer acting for Defendants "imposed these improper charges for the

purpose of causing the Plaintiff to default," resulting in his "financial harm and emotional

distress" as well as his being "placed into contempt of a marital settlement agreement" when

"false amounts [were reported] to the credit reporting agencies" by the servicer. (*Id.* ¶¶ 39–40.)

On July 31, 2020, Plaintiff brought suit against, *inter alia*, HSBC. (*See generally*

*Mongiello v. HSBC Bank USA, NA et al.*, Index No. 58368/2020 (N.Y. Sup. Ct. July 31, 2020)

(Dkt. No. 2) (Compl.).)[4] He asserted a cause of action to quiet title to the Property. (*Id.* ¶¶ 41–

75.) On June 17, 2022, that court granted the defendants' motion to dismiss. (*See* Ex. F.)

Approximately eight months later, on February 15, 2023, Plaintiff brought suit in Westchester

County Supreme Court. (*See generally Mongiello v. HSBC Bank USA NA as Trustee for the*

*LMT 2006-6 Trust Fund*, Index No. 56788/2023 (N.Y. Sup. Ct. Feb. 15, 2023) (Dkt. No. 1)

---

[4] In the documents attached to Plaintiff's FAC, there appears to be a document that purports to be a mortgage between Christopher Mongiello, as borrower, and Americo and Carmen Mongiello, as lenders. (*See* FAC, Ex. 1, at 19–50.) Despite this mortgage being dated January 1, 2020, it does not appear to have been notarized (and therefore presumably was not signed) until March 18, 2024. (FAC, Ex. 2, at 15.) It is also unclear whether this mortgage was ever recorded.

(Compl.).)  Again, he sought to quiet title to the Property.  (*Id.* ¶¶ 26–37.)  That court promptly

granted HSBC's motion to dismiss on the grounds that it lacked personal jurisdiction over the

defendant.  (*See Mongiello v. HSBC Bank USA NA as Trustee for the LMT 2006-6 Trust Fund*,

Index No. 56788/2023 (N.Y. Sup. Ct. Feb. 15, 2023) (Dkt. No. 46) (Decision and Order).)

A few months later, on October 5, 2023, Plaintiff filed a voluntary Chapter 13 bankruptcy

petition in this district's bankruptcy court.  (*See generally In re Christopher Mongiello*, No. 23-

BK-22732 (Bankr. S.D.N.Y. Oct. 5, 2023) (Dkt. No. 1) (Petition).)  On March 13, 2024, the

bankruptcy court dismissed the action under 11 U.S.C. § 1307(c) for unreasonable delay

prejudicial to creditors and for lack of good faith.  (*See In re Christopher Mongiello*, No. 23-

22732 (Bankr. S.D.N.Y. Oct. 5, 2023) (Dkt. No. 84) (Memorandum Decision).)[5]  On May 30,

---

[5] As the Court noted in its prior Opinion, Plaintiff's behavior—both, as indicated in the
state court decisions, in the state court proceedings and before this Court, has been not only
unorthodox but bordering on bad faith.  *See Mongiello*, 2025 WL 674345, at *3 n.2.  As Plaintiff
had previously been warned, he has generated "a growing list of untimely or otherwise improper
filings" in this and related Actions before the Court.  *Id.* (quoting Dkt. No. 28 at 3 (Memo
Endorsement dated Aug. 6, 2024)).  Since that juncture, Plaintiff has again engaged in a host of
improper filings in this and other cases before the Court.  (*See* Memo Endorsement dated May 7,
2025 (explaining that Plaintiff's behavior had only "reinforced" the Court's belief that "Plaintiff .
. . is straying very close to willful, obstinate refusal to play by the basic rules of the system upon
whose very power he is calling to vindicate his rights"); Dkt. No. 66 (Memo Endorsement dated
July 1, 2025) (explaining that Plaintiff was not entitled to a meet and confer and that Defendants'
reply brief would not be stricken purely because Plaintiff disputed the merits of the argument);
Memo Endorsement dated Oct. 17, 2025 (denying Plaintiff's request for emergency relief where
the sole claim invoked as the basis for that relief was a claim that had already been dismissed
with prejudice); Dkt. No. 86 (Memo Endorsement dated Dec. 3, 2025) (denying untimely and
unauthorized discovery requests by Plaintiff); Dkt. No. 88 (Memo Endorsement dated Dec. 8,
2025) (denying request to further amend FAC on the grounds that "Plaintiff cannot thwart
Defendants' right to seek dismissal of the First Amended Complaint by making it a moving
target").)
The Court advises Plaintiff that this behavior is improper, inappropriate, and could
subject him to sanctions up to and including dismissal of this Action with prejudice or his being
required to pay Defendants' legal fees for the time expended and expense incurred responding to
his improper filings.  The Court is particularly troubled by Plaintiff's sudden decision to dispute
the authenticity of documents and accuse Defendants of forgery when he made no such objection

2024, Plaintiff executed a quitclaim deed that transferred the Property to Americo and Carmen Mongiello.  (*See* FAC, Ex. 2, at 17–18 (County record of transfer from Plaintiff to Americo and Carmen Mongiello and copy of quitclaim deed); Ex. I.)

Further, Plaintiff alleges that the HSBC Bank Trust is a "non-existent trust."  (FAC ¶ 10.) He says that the trust has "no assets" and therefore "cannot validly claim to be the holder and owner" of the note and mortgage at issue here.  (*Id.* ¶¶ 10–11; *see also id.* ¶ 16.)  Plaintiff also claims that he received a "false and misleading letter" from a "loan servicer" for the mortgage at issue here, "claiming demand for payment on a debt which is expired."  (*Id.* ¶ 14 (footnote omitted).)  He claims that the letter is misleading because the assets of the trust have been distributed, the debt is expired based on the earlier-brought foreclosure action, and Defendants were aware that the debt had expired.  (*Id.* ¶ 16.)  Plaintiff likewise claims that Defendants engaged in fraudulent debt collection practices by filing a claim in bankruptcy court after the debt expired.  (*Id.* ¶ 31; *see also id.* ¶ 35 (claiming that the "debt sought to be collected was already in arrears when the Defendant purportedly acquired the subject mortgage," but

---

to the *very same documents* submitted in conjunction with Defendants' first Motion to Dismiss. (*See generally* Pl.'s Response in Opp'n to Mot. to Dismiss (Dkt. No. 35).)  If such objections are made without a good faith belief in their validity, they may constitute sanctionable conduct.  *See Williams v. Russo's Payroll Grp., Inc.*, No. 21-CV-2922, 2023 WL 9064553, at *2 (E.D.N.Y. Nov. 28, 2023) ("[T]he assertion of frivolous or unjustified objections will also be considered sanctionable.").

Given that "lax enforcement of standard procedures, rules and court orders results in the certainty of lax compliance and equally certain delay and prejudice to parties in interest, the Court cannot tacitly ratify such conduct" by failing to enforce its own rules.  *In Re: Phillip Burkart d/b/a Burkart Auto.*, No. 08-61077, 2010 WL 502945, at *3 (Bankr. N.D.N.Y. Feb. 9, 2010) (quotation marks and citation omitted).  Accordingly, Plaintiff is ***strongly advised*** to review the Court's Individual Rules in the event he makes future filings before the Court.  These rules can be accessed at the following link: https://www.nysd.uscourts.gov/hon-kenneth-m-karas. Enough is enough.

13

nevertheless the "money was demanded both from the title company and the false claim filed in bankruptcy court").)

C.  Procedural Background

Plaintiff filed the initial Complaint in this Action on March 25, 2024.  (*See* Compl. (Dkt. No. 1).)  Plaintiff made several procedurally improper motions in quick succession, including seeking summary judgment (Notice of Mot. (Dkt. No. 13)), which the Court denied, (Dkt. No. 14 (Memo Endorsement dated May 30, 2024)), and then repeatedly requesting reconsideration of that denial, (Dkt. No. 15 (Letter from Christopher Mongiello to Court dated May 30, 2024); Dkt. No. 16 (Letter from Christopher Mongiello to Court dated June 6, 2024)).  He also requested that the Court order any proceeds from the sale of the Property be placed into escrow, (Notice of Mot. (Dkt. No. 22); Mot. for Entry of Deposit into Court Registry (Dkt. No. 23)), a request the Court denied, (Dkt. No. 28 (Memo Endorsement dated August 6, 2024)).

Defendants moved to dismiss Plaintiff's initial Complaint, (Mot. to Dismiss (Dkt. No. 34)), Plaintiff opposed, (Pl.'s Resp. in Opp'n (Dkt. No. 35)), and Defendants replied, (Reply (Dkt. No. 36)).  While the motion to dismiss the initial Complaint was pending, Plaintiff continued to file unorthodox motions, (*see* Request for Subpoena (Dkt. No. 30); Request for Subpoena (Dkt. No. 41)), disregarding the Court's express instruction that he seek leave before filing any Motions, (*see* Dkt. No. 39 (Memo Endorsement dated Oct. 25, 2024)).  On March 3, 2025, the Court dismissed Plaintiff's Complaint for failure to state a claim upon which relief could be granted, but provided Plaintiff an opportunity to file an Amended Complaint.  *See generally Mongiello*, 2025 WL 674345.

On March 18, 2025, Plaintiff filed his Amended Complaint.  (*See* FAC.)  Defendants sought leave to file a Motion to Dismiss, (*see* Dkt. No. 50 (Letter from Leisl Kerechek, Esq. to

Court dated Apr. 1, 2025)), and the Court set a briefing schedule, (*see* Order dated Apr. 1, 2025 (Dkt. No. 51)).  On May 1, 2025, Defendants filed the Motion to Dismiss that is currently before the Court.  (*See* Mot. to Dismiss.)  Plaintiff filed his Opposition on May 6, 2025.  (*See* Pl.'s Opp'n.)  Briefing was completed on June 13, 2025.  (Reply (Dkt. No. 63).)

In the interim, Plaintiff filed multiple requests for emergency relief, which the Court denied.  (*See* Dkt. No. 58 (Memo Endorsement dated May 7, 2025); Pl.'s Emergency Mot. for TRO (Dkt. No. 73); Dkt. No. 74 (Memo Endorsement dated Oct. 17, 2025)).  He thrice sought to file a Second Amended Complaint, (Am. Compl. in Intervention (Dkt. No. 59); Mot. to Amend (Dkt. No. 67); Second Am. Compl. (Dkt. No. 68); Dkt. No. 77 (Letter from Christopher Mongiello to Court dated Nov. 10, 2025) (seeking leave to file third amended complaint)), and attempted to introduce new factual pleadings in letters to the Court, (Dkt. No. 60 (Letter from Christopher Mongiello to Court dated May 29, 2025)).  The Court denied Plaintiff's requests to file a Second (and Third) Amended Complaint.  (*See* Dkt. No. 62 (Memo Endorsement dated June 10, 2025); Dkt. No. 71 (Memo Endorsement dated Aug. 13, 2025); Dkt. No. 88 (Memo Endorsement dated Dec. 8, 2025).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-

15

me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, as noted, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint,

16

in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

As explained above, when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics and citation omitted). Moreover, where, as (arguably true) here, a plaintiff proceeds pro se, the Court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted); *Murphy v. Rodriguez*, No. 23-CV-6998, 2024 WL 4290723, at *4 (S.D.N.Y. Sept. 25, 2024) (same). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics, internal quotation marks, and citation omitted)).

B.  Analysis

Defendants argue that Plaintiff's First Amended Complaint, like his initial Complaint, fails to state any of the claims identified in his FAC—for (1) slander of title, (2) breaches of

unspecified statutes, or (3) an FDCPA violation—against Defendants. (Defs.' Mem. at 13–14.)

Defendants request that the FAC be dismissed in its entirety with prejudice. (*Id.* at 14.)

### 1. Failure to State a Claim

#### a. Slander of Title

Plaintiff's FAC first raises a claim for slander of title. (FAC ¶¶ 45–53.) This claim is virtually identical to that raised in Plaintiff's initial complaint. (Compl. ¶¶ 34–41.)[6] The only significant changes are that Plaintiff alleges that "the refusal to remove the mortgage constitutes a slander on the Plaintiff's title which irreparably harms him," (FAC ¶ 51), and that Plaintiff cites, as additional asserted factual support for his claim, the "filing [of] a false claim in bankruptcy court" by the Defendants, (*id.* ¶ 52).

First and foremost, the Court determines that it should adhere to its earlier determination that these allegations are insufficient to state a claim against Defendants pursuant to the law of the case doctrine. Under the law-of-the-case doctrine, "a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation." *Brentwood Pain & Rehab. Servs.*, *P.C. v. Allstate Ins. Co.*, 508 F. Supp. 2d 278, 288 (S.D.N.Y. 2007) (citing *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991)); *see also Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) ("The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (internal quotation marks omitted)); *United States v. Plugh*, 648 F.3d 118, 123 (2d Cir. 2011) (explaining that "[a]s a general matter . . . [a court should] adhere to its own decision

---

[6] The Court notes that the original Complaint contains two paragraphs numbered 33, two paragraphs numbered 34, and wo paragraphs numbered 35. (*See* Compl.) This citation spans from the first paragraph numbered 34.

at an earlier stage of the litigation" (internal quotation marks omitted)).  This doctrine "forecloses [only the] consideration of issues that have already been decided," *U.S. Bank Nat'l Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co.*, No. 12-CV-6811, 2014 WL 998358, at *4 (S.D.N.Y. Mar. 14, 2014) (internal quotation marks omitted), and is "discretionary" such that it "does not limit a court's power to reconsider its own decisions prior to final judgment," *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 8 (2d Cir. 1996) (internal quotation marks omitted); *see also Musacchio*, 577 U.S. at 245 ("The [law-of-the-case] doctrine expresses the practice of courts generally to refuse to reopen what has been decided, but it does not limit courts' power." (alteration adopted and internal quotation marks omitted)); *Ozturk v. Hyde*, 155 F.4th 187, 211 (2d Cir. 2025) (Nathan, J., writing for a majority of participating Second Circuit judges concurring in denial of rehearing en banc) ("Under our law of the case doctrine, when a court decides upon a rule of law, that decision should generally continue to govern the same issues in subsequent stages in the same case.  That is a discretionary doctrine of sound, albeit not inexorable, practice, permitting adjustment of prior rulings for cogent or compelling reasons." (internal quotation marks and citations omitted)).

To determine "whether the law-of-the-case doctrine is an impediment to Plaintiff's claim in its current form" the Court must consider whether "Plaintiff, in fact, amended [his] initial Complaint to such an extent that the Court's prior . . . holdings no longer suffice to resolve the instant Motion." *Masciotta v. Clarkstown Cent. Sch. Dist.*, No. 14-CV-7128, 2016 WL 4449660, at *5 (S.D.N.Y. Aug. 23, 2016).  As described, Plaintiff's allegations relating to this claim are virtually identical to those included in his initial Complaint.  The holdings of the Court's prior decision—that, on the facts alleged, Plaintiff "no longer has title to the Property," and therefore

19

cannot raise the claim, and that Plaintiff failed to plead facts sufficient to support falsity—apply with equal force here. *See Mongiello*, 2025 WL 674345, at *8.

Second, even if the Court were not bound by the law of the case doctrine, the Court would reach the same determination as it did in its prior Opinion, for the same reasons. *See id.*

Third, the Court dismissed Plaintiff's "claim under either RPAPL Sections 1501 and 1921 and for common law and statutory quiet title" with prejudice as "Plaintiff no longer has any interest in the Property." *Id.* at *9. Accordingly, even if the Court were not bound by the law of the case doctrine and Plaintiff had asserted more than conclusory factual allegations, this claim must nevertheless still be dismissed. *See Tunne v. Discover Fin. Servs., Inc.*, No. 22-CV-5288, 2024 WL 4664755, at *5 (S.D.N.Y. Oct. 3, 2024) (recommending dismissal of a claim solely on the grounds that it had "previously [been] dismissed with prejudice"), *report and recommendation adopted*, 2024 WL 4827854 (S.D.N.Y. Nov. 18, 2024); *Bravo v. MERSCORP, Inc.*, No. 12-CV-884, 2013 WL 4851697, at *1 (E.D.N.Y. Sept. 10, 2013) ("Plaintiff may not reassert claims that have already been dismissed with prejudice. Therefore, the claims dismissed with prejudice . . . are not properly before the Court." (citation omitted)).

### b. Various Statutory Violations

Once again, Plaintiff alleges that certain statutes cited in his FAC are "strict liability statutes," (FAC ¶ 61), and that he therefore is entitled to "exemplary damages of treble the amount, or twelve million dollars," (*id.* ¶ 63). Again, he does not clearly indicate the statutes to which he refers. The Court briefly addresses each statute in turn, except the asserted FDCPA claims, which it describes further below.

### i. RPAPL § 1921

Plaintiff asserts that his claim is brought, in part, pursuant to New York's Real Property Actions and Proceedings Law ("RPAPL") § 1921(1).  (*See* FAC ¶ 9.)  However, the Court already dismissed the RPAPL § 1921 claim with prejudice.  *See Mongiello*, 2025 WL 674345, at *9.  Accordingly, and for the same reasons that the Court must dismiss the quiet title claim (*i.e.,* the law of the case doctrine, a failure on the merits, and the claim's already having been dismissed with prejudice), the Court dismisses the RPAPL § 1921 claim.

### ii. RESPA

In Plaintiff's Amended Complaint, he again alleges violations of five provisions of RESPA: failure to "credit recovery of third party insurance proceeds" pursuant to 12 C.F.R. § 1024.17(f)(2)(i); failure to provide annual escrow account statements pursuant to 12 C.F.R. § 1024.17(i); failure to timely provide servicing disclosure statements pursuant to 12 C.F.R. § 1024.33(a); failure to refund escrow balance pursuant to 12 C.F.R. § 1024.34(b); and failure to timely respond to a notice of error and to correct said error pursuant to 12 C.F.R. § 1024.35. (*See* FAC ¶ 36.)  As to the RESPA claim, he includes no factual allegations beyond those contained in his initial Complaint.  (*Compare* Compl. ¶ 25 *with* FAC ¶ 36.)  Accordingly, the Court will dismiss the RESPA claim, as its earlier decision that the allegations were insufficient to state a claim constitutes law of the case.  *See Cook v. Dewitt*, No. 19-CV-2780, 2022 WL 580774, at *3 (S.D.N.Y. Feb. 25, 2022) (dismissing amended complaint with prejudice where there "ha[d] been no intervening change in controlling law" and "the facts alleged in both pleadings are substantially the same with some minor variations"); *Bigio v. Coca-Cola Co.*, No. 97-CV-2858, 2010 WL 3377503, at *2 (S.D.N.Y. Aug. 23, 2010) ("Because the allegations in Count One of the Amended Complaint do not differ materially from those already dismissed,

Count One of the Amended Complaint is barred by the law of the case." (footnote omitted)), *aff'd*, 675 F.3d 163 (2d Cir. 2012). Even if the Court were not bound by its earlier decision, it would dismiss this claim on the merits, for the same reasons explained in its earlier decision. *See Mongiello*, 2025 WL 674345, at *7 (explaining that Plaintiff's claims fail on the basis that he "failed to identify any damages that he has sustained *as a result of* [the alleged] violations").

### iii. False Claims

Plaintiff asserts in passing that "[f]iling a false claim in bankruptcy court is a federal crime, punishable by fines and imprisonment." (FAC ¶¶ 37g, 54.) He invokes 18 U.S.C. § 152(4) and 18 U.S.C. § 157 as the statutory bases for this assertion. (*Id.* ¶ 37g.) To the extent that Plaintiff is attempting to prosecute a federal criminal offense, he lacks standing to do so. *See Manchanda v. Reardon*, No. 23-CV-9292, 2023 WL 8879226, at *1 (S.D.N.Y. Dec. 22, 2023) ("[T]he Court *sua sponte* dismisses any claims that seek to initiate a criminal prosecution of Defendants or others, as a private citizen lacks standing to cause a criminal prosecution."); *Damon v. New York*, No. 23-CV-74, 2023 WL 11965130, at *20 (N.D.N.Y. Mar. 28, 2023) ("Plaintiff lacks standing to initiate a criminal proceeding against any party.") (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)), *report and recommendation adopted*, 2023 WL 11965128 (N.D.N.Y. Apr. 24, 2023). And to the extent that Plaintiff is attempting to bring such a claim as a private enforcer, there is no private right of action under the statute. *See In re Schneorson*, No. 22-40494, 2022 WL 4647555, at *13 (Bankr. E.D.N.Y. Sept. 29, 2022) ("[The p]laintiff's claim[] for bankruptcy fraud . . . must be dismissed because th[e] claim[] . . . [is a] statutory crime[] for which there is no private cause of action."); *In re Finnimore*, No. 13-CV-744, 2014 WL 1315589, at *3 (D. Conn. Mar. 31, 2014) ("The Court further notes that 18 U.S.C. § 152 is [a] criminal statute with no private right of action, and thus Appellant has no standing to

22

seek relief from this Court or the Bankruptcy Court (or any court) on these grounds."); *Truong v. Litman*, No. 06-CV-1431, 2006 WL 3408573, at \*4 (S.D.N.Y. Nov. 22, 2006) ("[Plaintiffs] cite no statutory provision in 18 U.S.C. § 152 and no decisional authority that confers upon them a private right of action under 18 U.S.C. § 152, and this Court has found none."), *aff'd*, *Truong v. Litman*, 312 F. App'x 377, 378 (2d Cir. 2009) (summary order) ("[W]e find no ground for disturbing the district court's holding that the [plaintiffs] have not made the difficult case for implying a private right of action under 18 U.S.C. Section 152, a criminal statute . . . ."); *see also* 18 U.S.C. §§ 152, 157.

### c. FDCPA

Plaintiff alleges that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") when the "PHH defendants" sought to "collect an expired obligation by filing a claim" in the bankruptcy proceedings against Plaintiff, and where they "refused to remove the slander from Plaintiff's title." (FAC ¶¶ 68–70.) Plaintiff may or may not have also intended to allege a violation of the FDCPA when he claimed that he received "false and misleading letter" from a "loan servicer" for the mortgage at issue here, "claiming demand for payment on a debt which is expired." (*Id.* ¶ 14 (footnote omitted).) In recognition of Plaintiff's pro se status, the Court considers whether either of these allegations are sufficient to state a plausible claim under the FDCPA.

"The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors, to [e]nsure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting 15 U.S.C. § 1692(e)); *Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433,

437 (2d Cir. 2018) (substantially same); *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F.

App'x 89, 93 (2d Cir. 2012) (summary order) (substantially same).  "The FDCPA establishes

certain rights for consumers whose debts are placed in the hands of professional debt collectors

for collection, and requires that such debt collectors advise the consumers whose debts they seek

to collect of specified rights."  *Kropelnicki*, 290 F.3d at 127 (quotation marks omitted); *see also*

*Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 487 (S.D.N.Y. 2014) (same).  "Debt

collectors that violate the FDCPA are strictly liable, meaning that a consumer need not show

intentional conduct by the debt collector to be entitled to damages."  *Easterling v. Collecto, Inc.*,

692 F.3d 229, 234 (2d Cir. 2012) (quotation marks omitted).  Moreover, a single violation is

sufficient to subject a debt collector to liability under the statute.  *See Ellis v. Solomon &*

*Solomon, P.C.*, 591 F.3d 130, 133 (2d Cir. 2010) (noting that "a single violation of the FDCPA is

sufficient to impose liability").

"The FDCPA creates a general prohibition against the use of 'false, deceptive, or

misleading representation or means in connection with the collection of any debt.'"  *Miller v.*

*Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (quoting 15 U.S.C. § 1692e).

"Section 1692e contains a non-exhaustive list of practices within the purview of this prohibition

. . . ."  *Id.*  Relevant here are § 1692e(2)(A), which prohibits the "false representation of" the

"character, amount, or legal status of any debt," § 1692e(5), which forbids any "threat to take

any action that cannot legally be taken or that is not intended to be taken," and § 1692e(10),

which bars "[t]he use of any false representation or deceptive means to collect or attempt to

collect any debt or to obtain information concerning a consumer."  15 U.S.C. §§ 1692e(2)(A),

1692e(5), 1692e(10).  (*See also* FAC ¶ 15.)  "A plaintiff may state a claim for an FDCPA

violation by alleging that a defendant made a representation that was false or deceptive or

misleading." *Russo v. United Recovery Sys., LP*, No. 14-CV-851, 2014 WL 7140498, at *4 (E.D.N.Y. Dec. 12, 2014) (alteration adopted) (emphases and quotation marks omitted); *see also Sutton v. Fin. Recovery Servs., Inc.*, 121 F. Supp. 3d 309, 313 (E.D.N.Y. 2015) ("A collection letter will be considered deceptive when it could mislead a putative-debtor as to the nature and legal status of the underlying debt, or when it could impede a consumer's ability to respond to or dispute collection." (alterations adopted) (quotation marks omitted)); *cf. Russell v. Equifax A.R.S.*, 74 F.3d 30, 34–35 (2d Cir. 1996) (finding a violation of § 1692e(10) where a consumer could have read a collection letter to allow her either 30 days or 10 days to dispute her claim).

The FDCPA also requires that, when a debt collector solicits a payment, it must "provide the consumer with a detailed validation notice." *Russell*, 74 F.3d at 34. This notice must include "a statement that the debt's validity will be assumed unless disputed by the consumer within 30 days, and an offer to verify the debt and provide the name and address of the original creditor, if the consumer so requests." *Id.* (citing 15 U.S.C. § 1692g(a)). "Collection activities and communications by the debt collector during the validation period must not . . . overshadow or be inconsistent with the disclosures the Act requires be provided in the validation notice." *Ellis*, 591 F.3d at 132 (citing 15 U.S.C. § 1692g(b)).

Courts "apply an objective test based on the understanding of the 'least sophisticated consumer' in determining whether a collection letter violates [§] 1692e." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993); *see also Easterling*, 692 F.3d at 233 ("Whether a collection letter is false, deceptive, or misleading under the FDCPA is determined from the perspective of the objective least sophisticated consumer." (quotation marks omitted)). Similarly, under § 1692g(b), "[w]hether collection activities or communications within the validation period overshadow or are inconsistent with a validation notice is determined under the

25

'least sophisticated consumer' standard." *Ellis*, 591 F.3d at 135 (quoting *Greco v. Trauner, Cohen & Thomas*, L.L.P, 412 F.3d 360, 363 (2d Cir. 2005)). "Under this standard, 'collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Easterling*, 692 F.3d at 233 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)). However, "in crafting a norm that protects the naïve and the credulous the courts have carefully preserved the concept of reasonableness." *Id.*

To state a plausible claim under the FDCPA, a plaintiff must allege facts that, if proven, would demonstrate the three elements of an FDCPA claim:

> (1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements.

*Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 529 (S.D.N.Y. 2013) (citation omitted); *see also Schmelczer v. Penn Credit Corp.*, No. 20-CV-2380, 2021 WL 325982, at *45 (S.D.N.Y. Feb. 1, 2021) (same). The Second Circuit reads a materiality requirement into the prohibition against "false, deceptive, or misleading representation[s] in the collection of a debt. *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018). The materiality requirement operates as "a corollary to the well-established proposition that if a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense." *Id.* (alterations adopted) (internal quotation marks and citation omitted).

Plaintiff asserts that Defendants "filed a claim in . . . [b]ankruptcy [c]ourt seeking to have the . . . [c]ourt enforce the subject expired note and mortgage, constituting a legal action which was intended to enforce an expired debt." (FAC ¶ 17.) He claims that the Defendants "must have committed some act or omission in violation of the FDCPA in that they are seeking to

collect an expired obligation by filing a claim for the same in the US Bankruptcy Courts knowing that the subject debt had expired." (*Id.* ¶ 69.)

Even assuming that Defendants are "debt collectors" under the meaning of the statute, Plaintiff's claim fails. The Second Circuit has explained that the protective purposes of the FDCPA typically are "not implicated 'when a debtor is instead protected by the court system and its officers.'" *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) (quoting *B– Real, LLC v. Rogers*, 405 B.R. 428, 432 (M.D. La. 2009)). "Federal courts have consistently ruled that filing a proof of claim in bankruptcy court (even one that is somehow invalid) cannot constitute the sort of abusive debt collection practice proscribed by the FDCPA, and that such a filing therefore cannot serve as the basis for an FDCPA action." *Id.* at 95. This is because the "FDCPA is designed to protect defenseless debtors and to give them remedies against abuse by creditors." *Id.* at 96. The Second Circuit has held that there is "no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself." *Id.*[7]  Indeed, in *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 228 (2017), the Supreme Court squarely foreclosed the type of claim Plaintiff attempts to assert here, following the same reasoning. In *Midland*, the Court explained that the filing of a bankruptcy proof of claim that "on its face indicates that the limitations period has run" in a Chapter 13 bankruptcy proceeding nevertheless "does not fall within the scope of . . . the Fair Debt Collection Practices Act." *Midland*, 581 U.S. at 228. In explaining the rule, the Supreme

---

[7] Despite this broad language, courts have recognized some circumstances where false bankruptcy claims can give rise to an FDCPA claim. *See, e.g.*, *Williams v. Bayview Loan Servicing, LLC*, No. 14-CV-7427, 2016 WL 8711209, at *9 (E.D.N.Y. Jan. 22, 2016) (noting that the FDCPA precludes claims based on actions that "occur[red] in the foreclosure litigation itself," as opposed to those that involve "extrajudicial attempts . . . to collect on [a] home loan"). None of those circumstances applies to the claims asserted in Plaintiff's FAC.

27

Court stated that the considerations that might otherwise lead a court to permit a FDCPA claim premised on a false assertion in a civil suit of a claim known to be stale were of "significantly diminished force in the context of a Chapter 13 bankruptcy." *Id.* at 231.[8] Accordingly, the Supreme Court saw no basis to conclude that the FDCPA should permit a cause of action based on the filing of obviously time-barred claims in a Chapter 13 bankruptcy proceeding.

That is precisely the type of claim Plaintiff seeks to assert here. He claims that Defendants knowingly filed false claims in the bankruptcy proceeding that he initiated. (FAC ¶ 69.) That proceeding commenced pursuant to Chapter 13 of the Bankruptcy Code. *See In re Mongiello*, No. 23-22732, 2025 WL 959174, at *1 (S.D.N.Y. Mar. 31, 2025) (describing the bankruptcy proceeding as one "under Chapter 13 of the Bankruptcy Code"). Therefore, Plaintiff's FDCPA claim premised on the filing of an assertedly false claim in his Chapter 13 bankruptcy proceeding is not viable.

Additionally, and apparently also as the basis for an FDCPA claim, Plaintiff alleges that he "received a false and misleading letter from a loan servicer for the instant mortgage claiming demand for payment on a debt which is expired." (FAC ¶ 14 (footnote omitted).) Plaintiff contends that the letter is false and misleading for three reasons: (1) that there "is no trust" that can claim ownership of the Property, on the asserted basis that "the assets have all been distributed"; (2) the "debt itself is expired because the Defendant brought a foreclosure action"

---

[8] The Supreme Court explained the multiple aspects of Chapter 13 proceedings that adequately protect debtors, including: that the proceedings are initiated by the consumer, and the consumer is therefore "not likely to pay a stale claim just to avoid going to court." *Midland*, 581 U.S. at 231. "A knowledgeable trustee is available" to ensure that the consumer is protected, and "[p]rocedural bankruptcy rules more directly guide the evaluation of claims." *Id.* at 231–32. And finally, the nature of the proceeding is "a more streamlined and less unnerving prospect for a debtor than facing a collection lawsuit." *Id.* at 232 (quoting *In re Gatewood*, 533 B.R. 905, 909 (BAP 8th Cir. 2015)).

that it later discontinued; and (3) that, purportedly, "more than 6 years have passed since a payment was made on the discontinued action to the Defendants and the statute of limitations [has therefore] expired." (*Id.* ¶¶ 16a–c.)

These allegations do not state a plausible FDCPA claim for multiple reasons. First, as Defendants argue, Plaintiff's FAC does not specify the entity that sent this letter. (*See generally* FAC.) This would be a reason, under Federal Rule of Civil Procedure 8, to dismiss the claim as insufficient to give the Defendants "fair notice" of the nature of Plaintiff's claim against them, to the extent that he does, in fact, assert a claim based on their actions. *See Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 349–50 (S.D.N.Y. 2014) (reasoning that simply "identifying the claims does not end the matter, because to satisfy Rule 8, each Defendant must have fair notice of the claim or claims alleged against it" and therefore concluding that, as to some Defendants "mentioned multiple times" in the complaint but without clear explanation of "their role in harming [p]laintiff," claims should be dismissed pursuant to Rule 8); *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 464 (S.D.N.Y. 2006) ("[A] claim that fails to identify any particular defendant that committed any specific act of wrongdoing . . . is insufficient pleading under Rule 8(a)(2)." (quotation marks omitted)), *aff'd* 266 F. App'x 31 (2d Cir. 2008) (summary order); *Appalachian Enters., Inc. v. ePayment Sols., Ltd.*, No. 01-CV-11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) ("The complaint in this case does not identify any particular defendant that committed any specific act of wrongdoing against plaintiff. Rather, the complaint simply attributes the wrongful acts as being committed collectively by the seventeen defendants. . . . Accordingly, the complaint fails to meet the lenient pleading requirements of Rule 8."). The Court determines that, at least as alleged in

the FAC, any FDCPA claim should be dismissed under Rule 8 for failing to give fair notice of the nature of that claim.

Moreover, Plaintiff has failed to make any allegations as to the contents of the letter, and therefore the Court cannot evaluate whether it was "misleading," let alone "materially misleading."  To allege the "material misrepresentation" necessary to state an FDCPA claim, Plaintiff must allege a statement that is subject to "two or more" reasonable interpretations, when read "by the least sophisticated consumer," where "only one" of the two interpretations "can be accurate." *Romonoyske v. Alltran Fin., LP*, No. 18-CV-7138, 2019 WL 1748605, at *1 (E.D.N.Y. Apr. 17, 2019); *Gissendanner v. Enhanced Recovery Co., LLC*, 793 F. App'x 5, 7 (2d Cir. 2019) ("For Plaintiff to prevail [on an FDCPA claim], he must clear two hurdles.  First, both proffered interpretations must be reasonable.  Second, the deception arising from such reasonable interpretations must be material.") (summary order) (citation omitted) (citing *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75–76 (2d Cir. 2016)); *see also Teitelbaum v. I.C. Sys., Inc.*, No. 20-CV-3272, 2021 WL 2206740, at *4 n.5 (E.D.N.Y. June 1, 2021) (reasoning, in the alternative, that an FDCPA claim would fail where plaintiff did not adequately allege materiality).  Plaintiff's FAC does not allege what statement the "loan servicer" made, why that statement was misleading (*i.e.*, the multiple "reasonable interpretations" of the statement), or whether the assertedly misleading statement was material.  The FAC therefore does not state a FDCPA claim against *any* Defendant based on this conduct.[9]

---

[9] Because the Court concludes that these bases are sufficient to dispose of this claim, it does not reach Defendants' argument that they are not "debt collectors" under the meaning of the FDCPA.  (*See* Defs.' Mem. 22–24.).

2. Amendment and Futility

Defendants argue that the Court should dismiss the Complaint with prejudice because each of Plaintiff's claims seek relief which has "previously been denied on multiple occasions," and cannot be remedied by an additional amendment, and therefore the FAC should be dismissed with prejudice.  (Defs.' Mem. at 26–28.)   Plaintiff does not address this argument in his Opposition. (*See generally* Pl's Opp.)

While a pro se litigant's claims should not be dismissed without granting leave to amend at least once, leave to amend a complaint may be denied when amendment would be futile.  *See Boykin v. Moreno*, No. 17-CV-6869, 2020 WL 882195, at *8 (S.D.N.Y. Feb. 24, 2020) (citing *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).  As described in the Court's previous Opinion, the Court has determined that Plaintiff's factual allegations are insufficient to state a claim under either RPAPL Sections 1501 and 1921 and for common law and statutory quiet title because Plaintiff no longer has any interest in the Property.

Here, the Court determines that all of Plaintiff's claims, save one, should be dismissed with prejudice.  The Court has already granted Plaintiff leave to amend as to the majority of his claims.  And "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure [the defects]."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan, 3, 2012) (dismissing with prejudice a pro se complaint that was "not simply 'inadequately or inartfully pleaded,' but rather contain[ed] substantive problems such that an amended pleading would be futile"), *aff'd*, 523 F. App'x 32 (2d Cir. 2013) (summary order).  There is one exception: Plaintiff's FDCPA claim based on the asserted "letter" he received.  (FAC ¶¶ 14, 16a–c.)  This claim was not raised in Plaintiff's initial Complaint, (*see* Compl.), and it is not clear whether he

31

has yet had the opportunity to amend as to these allegations. Moreover, it is unclear whether an opportunity to amend would be futile as to this claim, because the Court cannot discern against whom it is being asserted. Accordingly, the dismissal of this claim is without prejudice.

### III. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is granted. The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 55, and to mail a copy of this Opinion to Plaintiff. Plaintiff will have 30 days from the date of this Order to file an Amended Complaint, but only to re-plead the FDCPA claim based on the asserted letter he received. Failure to amend the complaint could result in dismissal of the FDCPA claim with prejudice. Any attempt by Plaintiff to otherwise amend the complaint would be frivolous. ***More to the point, if Plaintiff again asserts any of the claims that the Court has already dismissed with prejudice, he runs the risk of being subject to sanctions.***

SO ORDERED.

Dated: March 27, 2026
      White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

32